**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GUENDI MENDEZ HERNANDEZ<br>8504 16th Street, N.W.<br>Apt. 520<br>Washington D.C. 20910<br><br>    *Plaintiff,*<br><br>    v.<br><br>RITO LOCO, LLC<br>641 S Street N.W.<br>Third Floor<br>Washington D.C. 20001<br><br>Serve: LOUIE HANKINS<br>        Registered Agent<br>        641 S Street N.W., Third Floor<br>        Washington D.C. 20001<br><br>And<br><br>LOUIE HANKINS<br>641 S Street N.W.<br>Third Floor<br>Washington D.C. 20001<br><br>    *Defendants*. | Case No. 19-2071 |

**COMPLAINT**

Plaintiff, Guendi Mendez Hernandez ("Plaintiff Hernandez") by her undersigned counsel, Melehy & Associates LLC, hereby brings suit against Rito Loco, LLC ("RL LLC"), and Louie Hankins ("Hankins"), for violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the District of Columbia Minimum Wage Revision Act, D.C. Code § 32-1001 *et. seq.* ("DCMWRA") and the District of Columbia Payment and Collection of Wages Law (DCPCWL"), codified at D.C. Code §§ 32-1301 *et seq.* ("DCPCWL"). Plaintiff alleges as follows:

## THE PARTIES

1. Plaintiff Hernandez is an adult resident of the District of Columbia and was employed by Defendants from on or about June 1, 2015 to on or about Friday June 14, 2019, when Hankins terminated her. During the entire period of time that is the subject of this Complaint, Plaintiff's primary duties were preparing food for sale from Defendants' food truck, driving the food truck to various locations and driving it back to Rito Loco Restaurant and Bar and cooking food on the food truck for customers. Plaintiff is also an employee engaged in commerce within the meaning of the FLSA.

2. RL LLC is a limited liability company formed under the laws of the Commonwealth of Virginia and engaged in business in the District of Columbia. RL LLC was formed for the purpose of operating a restaurant and bar named "Rito Loco" and located at 606 Florida Avenue, N.W., Washington D.C. 20001. It owns and operates the food truck as well. From approximately June 1, 2015 to approximately June 14, 2019, when she was terminated, RL LLC employed the Plaintiff within the meaning of the FLSA, the DCMWRA and the DCPCWL because at all relevant times (through its owners and managers) RL LLC treated Plaintiff as an employee, paid her wages, supervised her, determined her rate of pay and the manner and frequency of pay, set her schedule and hired her and fired her. RL LLC also meets the definition of an "Enterprise Engaged in Commerce" under the FLSA (29 U.S.C. § 203(s)(1)(A)(i)), as it has: (1) employees engaged in commerce or the production of goods for commerce or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce; and (2) a gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

3. Hankins is an officer, director, owner and/or member of RL LLC. He is an employer of Plaintiff within the meaning of the FLSA, the DCMWRA and the DCPCWL because: (1) he is an owner, officer, director and/or member of RL LLC; (2) he has operational control over RL LLC and is significantly involved in the operations of the business; (3) he controlled the terms and conditions of Plaintiff's employment, including setting her work schedule, determining her rate of pay, how she was paid, whether she was paid an overtime premium for overtime hours and he was responsible for the wage violations at issue in this case; and (4) he has the ability to hire and fire Plaintiff and did in fact hire Plaintiff and then fired her on or about June 14, 2019.

## JURISDICTION

4. The jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 217. The Court has subject matter jurisdiction under § 1331 because Plaintiff's claims involve federal questions and the Court has pendant jurisdiction over the Plaintiff's District of Columbia claims under 28 U.S.C. § 1367.

5. This Court has *in personam* jurisdiction over Defendants because all of them conduct business in the District of Columbia.

## STATEMENT OF FACTS

6. During the entire span of her employment with Defendants (June 1, 2015 to June 14, 2019), Plaintiff drove, operated, prepared and sold food from the Rito Loco food truck. Specifically, each day that Plaintiff worked overtime hours, she drove to Defendants' location in the District of Columbia, prepared the food for the food truck, stocked the truck with supplies, and then drove the food truck to predetermined locations as instructed by Hankins or other RL LLC staff, cooked the food on the food truck to serve to customers, cleaned the food truck and then returned the food truck to the Defendants location in the District of Columbia.

7. For the entire span of Plaintiff's employment with Defendants, Defendants paid Plaintiff on an hourly basis for the hours worked, but never paid the Plaintiff (who was non-exempt under the FLSA and the DCMWRA) an overtime premium for overtime hours. And, Defendants failed to pay Plaintiff anything at all for some of the hours she worked, including both straight time and overtime hours. Plaintiff's hourly rate of pay ranged from $12.00 per hour to $16.50 per hour, as she received salary increases throughout her tenure with Defendants. Although Hankins or others in Defendants' employ kept a written record of the hours Plaintiff worked, Plaintiff was not always paid for all hours worked.

8. At all times relevant to the Complaint, Plaintiff was employed in the District of Columbia because: (1) she *regularly spent* more than 50% of her working time in the District of Columbia; and/or (2) her employment was based in the District of Columbia (where Rito Loco was located) and she *regularly spent a substantial amount* of her working time in the District of Columbia and not more than 50% of her working time was spent in any particular state. D.C. Code § 32-1003.

9. In 2015, Plaintiff spent several weeks working overtime between the beginning of her employment in June, 2015, through September 2015 and the weeks when she worked overtime are recorded in records maintained by the employer and can be determined by an examination of the Defendants' time and payroll records.

10. In April, May, June and July, 2016, Plaintiff routinely worked at festivals several days per week, where she would sell food from the food truck. During these four months in 2016, Plaintiff estimates that she worked six days a week (with Monday off) during the following hours: Tuesday from 7:00 a.m. to 4:00 p.m. with no break (9 hours); Wednesday from 7:00 a.m. to 4:00 p.m. with no break (9 hours); Thursday at a festival beginning at 10:00 a.m. and continuing to

4

11:00 p.m. with a one hour break (12 hours); Friday at a festival beginning at 6:00 a.m. and ending at midnight, with a 2 hour break (16 hours); Saturday at a festival beginning at 6:00 a.m. and ending at midnight, with a 2 hour break (16 hours); Sunday at a festival from 10:00 a.m. to 6:00 p.m. with no break (8 hours). This was a total of approximately 70 hours per week.

11. In August and September, 2016, Plaintiff did not perform festival work and she worked five days per week. During that non-festival time frame, Plaintiff estimates that she worked three days per week from 7:00 a.m. to 4:00 p.m. with no break (9 hours) and two days per week from 7:00 a.m. to 9:00 p.m. with a one-hour break (a double shift of 13 hours after the break is deducted). This is a total of approximately 53 hours per week.

12. In April, May, June and July, 2017, Plaintiff also routinely and consistently worked at festivals, where she would prepare food from the food truck. During these four months in 2017, Plaintiff estimates that she worked five days a week (with Monday and Tuesday off) during the following hours: Wednesday from 7:00 a.m. to 4:00 p.m. with no break (9 hours); Thursday at a festival beginning at 10:00 a.m. and continuing to 11:00 p.m. with a one hour break (12 hours); Friday at a festival beginning at 6:00 a.m. and ending at midnight, with a 2 hour break (16 hours); Saturday at a festival beginning at 6:00 a.m. and ending at midnight, with a 2 hour break (16 hours); Sunday at a festival from 10:00 a.m. to 6:00 p.m. with no break (8 hours). This was a total of approximately 59 hours per week.

13. In August, 2017, Plaintiff did not perform festival work and she worked five days per week. During this time frame, Plaintiff estimates that worked three days per week from 7:00 a.m. to 4:00 p.m. with no break (9 hours) and two days per week Plaintiff worked a double shift from 7:00 a.m. to 9:00 p.m. with a one-hour break (13 hours). This is a total of approximately 53 hours per week.

14. Plaintiff was out on pregnancy related leave from October 2017 to sometime in April 2018 and she did not work during this time frame.

15. In 2018, Plaintiff worked overtime hours only in July and/or August, 2018. During those months Plaintiff estimates that she worked a total of five days a week, three days per week from 7:00 a.m. to 4:00 p.m. with no break (9 hours) and two days per week worked a double shift from 7:00 a.m. to 9:00 p.m. with a one-hour break (13 hours). This is a total of approximately 53 hours per week.

16. In July and/or August, 2018, Plaintiff also worked at one festival for several days. During that week, Plaintiff estimates that she worked the following hours: Wednesday from 7:00 a.m. to 4:00 p.m. with no break (9 hours); Thursday at a festival beginning at 10:00 a.m. and continuing to 11:00 p.m. with a one hour break (12 hours); Friday at a festival beginning at 6:00 a.m. and ending at midnight, with a 2 hour break (16 hours); Saturday at a festival beginning at 6:00 a.m. and ending at midnight, with a 2 hour break (16 hours); Sunday at a festival from 10:00 a.m. to 6:00 p.m. with no break (8 hours). This was a total of approximately 59 hours per week.

17. In 2019, sometime between May and June, Plaintiff worked at two festivals. During the times of the festivals, Plaintiff estimates that she worked five days per week and worked the following days and hours: Wednesday from 7:00 a.m. to 4:00 p.m. with no break (9 hours); Thursday at a festival beginning at 10:00 a.m. and continuing to 11:00 p.m. with a one hour break (12 hours); Friday at a festival beginning at 6:00 a.m. and ending at 1:00 a.m. the next day, with a 2 hour break (17 hours); Saturday at a festival beginning at 6:00 a.m. and ending at 1:00 a.m. the next day, with a 2 hour break (17 hours); Sunday at a festival from 10:00 a.m. to 7:00 p.m. with no break (8 hours). This was a total of approximately 63 hours per week.

18. In April, May and June, 2019, during non-festival time, Plaintiff estimates that she worked at total of five days a week three days per week from 7:00 a.m. to 4:00 p.m. with no break (9 hours) and two days per week from 7:00 a.m. to 9:00 p.m. with a one-hour break (13 hours). This is a total of approximately 53 hours per week.

19. The applicable statute of limitations under the DCMWRA and the DCPCWL (which went into effect on February 26, 2015), provides that an action, "must be commenced within 3 years after the cause of action accrued, or the last occurrence if the violation is continuous." D.C. Code § 32-1308 (c)(1). On a continuing and ongoing basis from the beginning to the end of Plaintiff's employment with Defendants, they failed to pay the Plaintiff an overtime premium for her overtime hours and failed to pay her for some hours worked in violation of the DCMWRA and the DCPCWL. Given that Plaintiff's employment ended on or about June 14, 2019, the last violation occurred on that date and the three-year limitations period for her wage claims will elapse on June 14, 2022. Therefore, Plaintiff has asserted timely claims for violations of the DCMWRA and the DCPCWL for following period: June 1, 2015 to the end of her employment with Defendants (June 14, 2019).

20. Plaintiff has also asserted timely wage claims under the DCMWRA and the DCPCWL from June 1, 2015 to the end of her employment with Defendants (June 14, 2019). The statute of limitations for her claims under the DCMWRA and the DCPCWL was tolled beginning May 27, 2015 and for each day thereafter, when, on a continuing basis, Defendants failed to comply with the notice provisions of D.C. Code § 32-1008 (c) and (d) (which became effective on February 26, 2015). Section 32-1008 (c) and (d) required Defendants, to provide written notice to Plaintiff of, *inter alia*, her overtime rate of pay. Defendants were required to comply with this written notice provision within 90 days after the statutory amendments took place – no later than

May 27, 2015 and within 30 days of any change in that rate. *See* D.C. Code § 32-1008 (d)(1)(A). At no time during Plaintiff's employment with Defendants did they comply with the notice provisions by providing Plaintiff with written notice of any type (not even her paystubs contained that notice), indicating the rate of her overtime pay. Since Defendants failed to provide the required written notice to Plaintiff of her overtime rate of pay, the statute of limitations in § 32-1308 (c) was tolled from the inception of Plaintiff's employment and for the duration of it. This also means that Plaintiff has timely unpaid wage claims (under the DCMWRA and the DCPCWL) for following time frame: June 1, 2015 to the end of Plaintiff's employment. *See* D.C. Code § 32-1008 (d)(3) ("The period prescribed in § 32-1308 (c), shall not begin until the employee is provided all itemized statements and written notice required by this section").

21. Thus, for the period of approximately June 1, 2015 to the end of her employment with Defendants, Plaintiff is entitled to her unpaid overtime wages and unpaid straight-time wages plus an equivalent amount equal to three times her unpaid wages as liquidated damages pursuant to D.C. Code §§ 32-1012 (b)(1) and 32-1308 (a)(1)(A), along with attorney's fees at the Adjusted Laffey Matrix rate, the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

22. Without the time and/or payroll records, Plaintiff is unable to estimate the precise amount of wages she is owed. Once she receives the time and/or payroll records from the Defendants, Plaintiff will provide the Defendants with those calculations and/or amend the Complaint.

## COUNT I
## VIOLATIONS OF THE FLSA

23. Plaintiff re-alleges and incorporates herein the allegations contained in the paragraphs above.

24. Plaintiff was engaged in commerce and/or handled goods that have been moved in commerce, and alternatively, RL LLC was an enterprise engaged in commerce for the entire time that Plaintiff was employed by the Defendants, making the Defendants subject to the FLSA with regard to Plaintiff.

25. Defendants violated the FLSA by knowingly failing to pay Plaintiff Hernandez an overtime premium for her overtime hours – *i.e.* one and one-half times her regular hourly rate for each hour over 40 that she worked during each workweek that she was employed by Defendants.

26. Defendants' actions were willful as defined by the FLSA and were not undertaken in good faith and therefore, both are liable to Plaintiff for liquidated damages and the statute of limitations for the FLSA claims is three years.

27. Defendants are liable to Plaintiff Hernandez under 29 U.S.C. § 216(b) of the FLSA, for her unpaid overtime premium compensation, plus an additional equal amount as liquidated damages, court costs, reasonable attorneys' fees and expenses.

28. The precise amount owed to the Plaintiff by Defendants cannot be calculated because Plaintiff and her counsel do not possess all of her time and payroll records, which are in possession of Defendants.

### COUNT II
### VIOLATIONS OF THE DCMWRA

29. Plaintiff re-alleges and incorporates herein the allegations contained in the paragraphs above.

30. At all times relevant to the Complaint, Plaintiff was an "employee" of Defendants within the meaning of D.C. Code § 32-1002 (2).

31. At all times relevant to the Complaint, Defendants were "employers" of Plaintiff within the meaning of D.C. Code § 32-1002 (3).

32. At all relevant times, Plaintiff was employed in the District of Columbia by Defendants, within the meaning of the DCMWRA.

33. Defendants violated the DCMWRA by failing to pay Plaintiff an overtime premium for the overtime hours she worked from June 1, 2015 to June 14, 2019.

34. The precise amount owed to the Plaintiff by Defendants cannot be calculated because Plaintiff and her counsel do not possess all of her payroll records and time records, which are in possession of Defendants.

35. As a result of the violations of the DCMWRA by Defendants and the manner in which the statute of limitations is computed (and tolled), they are liable for Plaintiff's unpaid overtime wages for the entire span of Plaintiff's employment with Defendants (June 1, 2015 to June 14, 2019), liquidated damages equal to three times the unpaid overtime wages and reasonable attorneys' fees and costs incurred in this action, including attorneys' fees at the Adjusted Laffey Matrix rate, the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

## COUNT III
### (VIOLATIONS OF THE DCPCWL)

36. Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

37. At all relevant times, Defendants were employers of Plaintiff within the meaning of the DCPCWL.

38. At all relevant times, Plaintiff was employed in the District of Columbia by Defendants, within the meaning of the DCPCWL.

39.     Defendants violated the DCPCWL by failing to pay the Plaintiff for all hours worked. The precise violations are apparent from the time and payroll records which are in Defendants' possession.

40.     Additionally, 30 working days have passed since the wages were due to be paid and therefore, Defendants are liable for liquidated damages equal to three times the amount of unpaid wages. *See* D.C. Code §32-1303 (4).

41.     As a result of the violations of the DCPCWL by Defendants and the manner in which the statute of limitations is computed (and tolled), they are liable for Plaintiff's unpaid straight-time wages for the entire span of Plaintiff's employment with Defendants (June 1, 2015 to June 14, 2019), liquidated damages equal to three times the unpaid overtime wages and reasonable attorneys' fees and costs incurred in this action, including attorneys' fees at the Adjusted Laffey Matrix rate, the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

## RELIEF REQUESTED

Plaintiff requests the following relief:

A.  enter a judgment against Defendants, jointly and severally, and in favor of Plaintiff, based on their violations of the FLSA, in the amount of Plaintiff's unpaid and illegally withheld overtime wages, plus an amount equal to her unpaid overtime wages as liquidated damages, for violations occurring during the time frame outlined in the Complaint;

B.  enter a judgment against Defendants, jointly and severally, and in favor of Plaintiff, based on their violations of the DCMWRA and the DCPCWL, in the amount of

      Plaintiff's unpaid and illegally withheld and unpaid overtime and straight time wages, plus an amount equal to three times the amount of unpaid overtime and straight-time wages as liquidated damages during the time frame outlined in the Complaint;

C.     award Plaintiff her reasonable attorney's fees and costs incurred in this action at the Adjusted Laffey Matrix rate, the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1); and

D.     grant any other and further relief as the nature of Plaintiff's cause may require.

                                  Respectfully submitted,

                                  _____/s/_____

                                Omar Vincent Melehy, Esq.
                                DC Bar No.: 415849
                                MELEHY & ASSOCIATES LLC
                                8403 Colesville Road Suite 610
                                Silver Spring, Maryland 20910
                                ovmelehy@melehylaw.com
                                Phone:  (301) 587-6364
                                Fax:     (301) 587-6308
                                *Attorney for Plaintiff*